The next case is Wright v. Martin, et al. All right, Mr. Hurstoff, you have two minutes reserved for rebuttal. You can begin whenever you're ready. Good morning, Your Honors, and may it please the Court. I'm Jonathan Hurstoff, counsel for Plaintiff Appellant Ian Wright. The district court erred in granting summary judgment on Mr. Wright's Eighth Amendment claim with respect to his chronic abdominal pain. Now, the district court granted summary judgment solely reaching the defendant's exhaustion defense under the Prison Litigation Reform Act. And because the district court reached only the exhaustion issue and because this Court's appointment on the order specifically directed briefing on the non-exhaustion issue, my intent this morning is to focus on the non-exhaustion issue unless Your Honors have questions on any of the other issues in this appeal. So the district court did err in finding that Mr. Wright's claim was not exhausted at the prison. There's ample evidence to show that Mr. Wright indeed filed an appeal from the denial of his grievance and filed that appeal the day after the underlying grievance was  When Mr. Wright opposed the defendant's motion for summary judgment, he put in a that he had filed an appeal from the denial of the grievance, and he attached the appeal to that declaration. And there were, I think, a bunch of grievances, a bunch of first-level grievances. He only claims that he appealed that one, right? That's right, Your Honor. So there's no sort of flood of... He doesn't attach ten identical-looking appeal forms for ten different grievances. Just this one, he says. This is the MRI request, right? That's right, Your Honor. In the district court's summary judgment decision, that makes a chart of his various grievances and whether they were appealed. The only one where there's any dispute about whether there was an appeal is this one. So your argument is, in light of that declaration, if the district court had had a hearing, if their view was, we never got it, he's not being truthful about that, you'd have to have a hearing to resolve that. That's right, Your Honor. Here in the trial, we'll probably be hearing more from the Supreme Court this term on whether and under what circumstances a jury's trial is required on the issue of exhaustion. But at a minimum, an evidentiary hearing on the exhaustion issue would be required. I know this wasn't even within the scope of what we asked you to do, but if you could just talk about the merits, and you did brief it briefly. Here, I think you said in your reply brief, you're not contesting that the giving of the medication initially in February by the doctor, rather than doing the MRI, that that somehow is actionable. You concede that, right? Because that's a yes or no. The basis of the claim is not the doctor didn't do the MRI in February, but gave him this prescription instead. That's right, Your Honor. It's really the continuum that rises to the level. All right, well, let's just discuss the continuum. He comes back in in April and May and says, I want the MRI. So, I don't know, you would assume it would be within medical judgment to wait several months to see whether or not what they gave him worked or did not work, right? If he came in a week later and said, I want the MRI, you would say, oh, look, you've only been taking that stuff for a week, right? Well, I think viewed in the light most favorable to Mr. Wright, it's not just the week or the couple month period. Mr. Wright came into this prison, Corrigan, and told them as early as February that a doctor had previously said that he needed an MRI. But he also had said he had these pains since 2014, so there was nothing acute about this condition, right? He didn't say he had this since 2014, intermittently on and off since 2014, right? That's true, but it became more chronic in the 2020 timeframe, which is the point at which... We have a lot of cases. Obviously, there can be a case where a delay in imaging X-rays could potentially rise to an Eighth Amendment violation, but here we're talking about, he was out of the facility by October, right? He was out of the facility by October, but he continuously complained that... The claims here are against Dr. Fetter and his coordinator, Brennan. That's who the claims are against, right? Yes, and they were... The last time, Dr. Fetter didn't even see him after May, but reviewed, I guess, in September what was going on with respect to other nurses with him, right? So, yes, Mr. Wright was transferred to Cheshire in September or October of 2020. So, we would have to find, basically, the failure to give him an MRI for a condition that he had, and also COVID was going on. They noted that when he came in in April or May, that was the height of COVID, right? So, they said routine imaging wasn't being done during that period because of COVID. They did say that, but I would say that COVID doesn't excuse a failure to investigate, and the kind of complaints about very serious abdominal pain. We have to find this is still outside medical judgment. We have a bunch of cases. You know them. Let's say medical judgments don't rise to a disagreement over treatment, don't rise to the level of an Eighth Amendment violation. Certainly true, Your Honor, but this... So, we would have to find that between, I guess, if you say a few months because they gave him medication, sometime in April, between April and October, because they didn't give him an MRI for something that he had intermittently since 2014, the doctor determined that it wasn't necessary, that that's an Eighth Amendment, that's a potential Eighth Amendment violation. That would be a lot of cases, right? Well, certainly, I would push back on the notion that it was intermittent. It's true that there was a period of time, perhaps, between 2014 and 2016, I guess, in 2020, when Mr. Wright wasn't experiencing as much pain, but starting in the beginning of 2020, the pain was constant, and he complained over and over and over again about it, and all the prison did was prescribe him pills, and we think that's insufficient. We think that we did a Rule 28J letter last week on this Court's recent mallet decision, which we think stands for the proposition that it's not necessarily a question of medical questions. But that must be found. First of all, that was a motion to dismiss that you could infer from what the defendants had, they had actual knowledge that he had prostate cancer given abnormal cystography results. Certainly, Your Honor. That's not what we have here, right? It's not like they had some information that, again, was some risk to him. Certainly, Your Honor, the facts are different, and I understand the procedural posture is different, but I think what the mallet case does stand for, it stands in contrast to what seems to be the defendant's position that merely prescribing pills necessarily absolves a prison of an Eighth Amendment violation. That's really why we're pointing to the mallet decision. We think that the fact that Mr. Wright complained over and over and over again during 2020 about this abdominal plane and repeatedly explained that he needed the MRI and that the previous doctor had said that an MRI was necessary. The defendants here were on notice of all of that, and they did nothing for months. We think that rises to the level of an Eighth Amendment violation. I'll also note that the court did not reach the Eighth Amendment issue, if it vacates and remands on the exhaustion issue, which is the only issue that the district's court reached. Thank you. Okay. We have from Mr. O'Rourke. May it please the Court, Evan O'Rourke on behalf of the defendant, Appellees. This court should affirm the judgment of the district court for two reasons. First, the plaintiff failed to exhaust his administrative remedies, and second, there is no merit to his Eighth Amendment deliberate indifference claim. I would welcome any questions the court has as to either of those issues, but I'd like to begin by… Well, on exhaustion, there is a declaration. He says that he sent it, right? Yes. Normally, you would have to have a hearing. If someone says, I sent it in, if the district court is going to reject that, you would have to have a hearing. Normally, that would be the case, Your Honor. The problem here is that the plaintiff went further and presented additional evidence showing that the purported appeal form was deficient in this respect. Well, I think, you know, I saw that back and forth, but just because he provided a copy of the agreements that didn't attach the ruling doesn't mean that he didn't do that when he mailed it in. And you actually didn't even raise that in your motion with the court, right? We didn't raise it in the motion with the court. So he had no idea that that was even an issue, whether or not he attached the ruling. And he certainly had attached the rulings on other ones, right? Yes, Your Honor. So he knew how to do that, right? We had to do what, Your Honor? No, he knew how to do that. Oh, yes. He knew how to do that, which… So how was he supposed to know if you didn't raise whether or not he attached? Your argument was that he didn't file it at all, and he puts it in a declaration saying, I filed it, and the district court comes out with an opinion saying, well, even if you filed it, you didn't attach the ruling. Is that really fair? It is, Your Honor. And so far as – look, we didn't – we couldn't have raised this issue because we were not aware of this form until he opposed summary judgment. Did you file a reply? Yes, we did file a reply, Your Honor. Did you raise it in the reply? Not specifically as to the… So you could have. I mean, I don't think it's entirely true. Or you can always – I mean, the district court, unlike here, a district court is always getting more information, right? Yes. You can always let the district court know, right?  I'll also note that the same is true with plaintiff. Plaintiff did move for reconsideration here, and it was extensively briefed, and he didn't mention anything. Well, hey, actually, I did have this attachment, and here it is, which sort of undermines… The court points out, though, in his original declaration, he says, I complied with the directive, and that, again, construing it most favorably to him would mean including attaching it, right? Yes. I will note that the declaration didn't… The form referenced the number of the ruling, too, I think, right? That was actually a different portion of the record, Your Honor. The declaration, which is paragraph 11, specifically just said, I filed an appeal. No, no. I'm talking about his grievance form. Oh, the grievance form. I thought his grievance form referenced – I think the rulings are given numbers, or am I misunderstanding that? Yes. Yes, that's correct. So he referenced the number of the ruling. That's correct. And yet what you're arguing here is that he should – he hasn't exhausted because he didn't attach it, and it wasn't even raised by you, even in your reply. It was the – once we presented evidence that there were no appeals filed whatsoever, it was the plaintiff's burden to present enough evidence to create a material dispute of fact over whether or not he properly exhausted. And the only evidence he presented, the district court properly concluded that it was not enough to create a genuine dispute of material fact. Let me just ask you about the merits. You concede that – you know, it seems like you're suggesting in the brief that both the Supreme Court and this Court have held that diagnostic testing could never rise to a level of an Eighth Amendment violation because it's medical judgment. But that's not the law, right? Correct. That is not the law, Your Honor. It can when there are allegations or proof that the doctors were operating in bad faith. And here we have no such evidence. So the Malik case – Enough to raise an issue of fact on that, right? For summary judgment purposes, right? You said there has to be enough to raise an issue of fact. Yes, that's correct. And so the Malik case actually perfectly contrasts with this case. Although that was at the motion to dismiss phase, whereas here we're at the summary judgment phase, there at least the plaintiff alleged facts suggesting that the medical staff had denied him diagnostic testing for nefarious reasons. They called him scum when he asked for medical assistance. They said that they told him that they were going to give him only the minimum treatment that they could possibly give him. Those types of facts can support an Eighth Amendment deliberate indifference claim for delaying or denying diagnostic testing. But here we have no such facts. I mean, that's an example of what might satisfy. But it doesn't have to be nefarious. For whatever reason, your prison system is so overwhelmed, you're just not doing it for anybody, right? We just don't have time for this. And you know it's creating a substantial risk to certain inmates. You may not be doing it out of, what, bad faith with respect to a particular inmate. It'd just be like, we're just not going to do this for whatever reason, right? Yes. But the key is that there has to be – the physician has to subjectively infer that the course of treatment they're recommending will subject the plaintiff to a substantial risk of harm. And here there is no such evidence. Dr. Fetter met with the plaintiff once in February of 2020, prescribed him the medication, and said, come back if it doesn't work. When he did come back, it was at the height of the COVID-19 pandemic, and the doctor said, we've got restrictions. Tell him to come back in one to two months. After that – And the doctor did that without seeing him. Yes, because at that point he met with a nurse, and the nurse reached out to the doctor and said, hey, is there an MRI pending for him or not? But in spite of the follow-up, so the doctor says, hey, try this med. If it doesn't work, come back to me. He comes back, and the doctor says, not only am I not going to send you to an MRI, I'm not even going to see you for another one to two months. You know, I understand that the subjective prong of deliberate indifference is tricky, but that feels problematic. They believed that this was routine imaging. There's no evidence that they believed there was some urgency here that required diagnostic testing that couldn't wait one to two months, even if they were mistaken at most. But how can the doctor form that opinion by declining to see him on the return? What the record shows is that the doctor formed that opinion based on meeting with him in February and that the only new information she received was through the nurse that met with the plaintiff in April. I do want to emphasize, though, that neither defendant had any personal involvement with the plaintiff after that point. So after May 2020, they had no further involvement. So the continuum that was discussed earlier, the plaintiff did not sue any of the medical staff that he met with in September twice of 2020 or anyone after that fact. There was something in the record that he saw the doctor in September 2020, and she, again, told him in the hallway or something. Wasn't there something about him saying she suggested he could get the imaging? Yes, there was disputed testimony to that point that they encountered each other in the hallway. We could potentially have some awareness of Dr. Fetter that even in September he was still trying to get this imaging, right? Yes, and it is also in the record that he went on September 19th. He went to see a medical, but he reported no abdominal pain. And then September 23rd, four days later, he goes back. He says, I'd still like the MRI. And the nurse who met with him, who was not a defendant, prescribed him a laxative because he was complaining of constipation. And so neither of those are defendants. And there's no evidence in the record that could support a deliberate indifference finding as to either of these defendants after May 20th. Can I go back to the exhaustion for just a minute?  So the district court's summary judgment ruling reads like a classic summary judgment ruling. Defendant moves for summary judgment against a plaintiff. And even cites to the standards, the law that we apply, where a defendant, a party not bearing the burden of proof, moves for summary judgment against a party bearing the burden of proof. But on the exhaustion issue, the defendant bears the burden of proof, right? It's an affirmative defense, and we've held that a defendant raising an affirmative defense has the burden of proof at trial or on a motion for summary judgment. So didn't the district court apply the wrong standard? No, Your Honor. My understanding is that the defendants bear the initial burden of proving that the plaintiff failed to exhaust. But once they meet that showing, that the burden then shifts. Then it only shifts to show the unavailability. Yes. Our discussion today, none of us are really getting to unveil those. Okay. So on the question of whether he exhausted, on which we have an assertion by the plaintiff, at least, of a disputed material fact, that is, did he appeal the MRI, on that question, that is a burden. The burden falls on the defendant.  The burden falls on the defendant on that question. I would agree, Your Honor. The district court properly concluded, though, that the evidence that was presented was simply not enough to create a material disputed fact. But the evidence is not. But it would be your obligation to show that there is a dispute, right? Because you have the burden of proof. The assumption that you have to start from the assumption that there was exhaustion. Yes. Sorry. I misspoke there, Your Honor. That's correct. Okay. We don't dispute that. Your Honors, I see my time is dwindling here. I would welcome any other questions that the court has on either of the issues. If there are none, we would urge the court to affirm. Thank you. Thank you. Mr. Herzog, you have two minutes for a vote. Thank you, Your Honor. Just a couple of quick points. I think Your Honor's hit on the right question with respect to exhaustion and the defendant's argument that Mr. Wright did not append the underlying grievance denial to his appeal. That was never raised in the defendant's motion for summary judgment. And therefore, Mr. Wright had no reason to specifically articulate that he indeed attached the underlying denial. Had that been raised either by the defendants or by the district court before granting summary judgment, he would have put in the declaration that he did indeed attach that grievance denial. And in any event, even with the record that we have, there is sufficient evidence to find that he attached the underlying grievance denial. In his declaration, he said that he appealed the denial of the grievance. And in his underlying brief in opposition, he said that he appealed in accordance with the prison's procedures, one of which is the requirement that he append that. If you prevail on that issue, is that the end of the appeal? I'm sorry, Your Honor. If you prevail on that issue that you're talking about, is that the end of the appeal? I mean, is that the issue, the deciding determinant of issue here for us? I actually don't think that the district court granted summary judgment on that basis. The district court listed some evidence that it viewed as showing that he did not file an appeal at all. But I don't read the district court's opinion as resting on his failure to append the underlying decision. I think that's not an alternative ground for affirmance. Does that answer your question, Your Honor? Can I just ask you on the merits? Is there any case you have by us or any circuit court where someone in a jail shows up with chronic pain, they're prescribed some medication, and they're denied imaging, whether it be an X-ray, whether it be an MRI, for approximately six months, and a court has found that that, on the subjective standard, even if it's sufficiently serious, that that would present an excessive risk to an inmate that would violate the Eighth Amendment? Is there any case you have on that? We don't have a case with them, with these actors. I saw a lot of cases that say, again, X-ray and alternative diagnoses generally is just not going to be enough. Well, the Supreme Court, for instance, in Farmer and then in plenty of later cases from this court, have said that there's a serious enough medical need on the objection. I agree with you. You heard my question. I have no doubt that it can be satisfied. But looking at these facts, and we have a six-month period during COVID where they prescribe medication and decline in imaging, there's no case that says that type of scenario. Something analogous to that would rise to an Eighth Amendment violation, right? I haven't seen that particular fact pattern, but the standard is wanton infliction of pain, and that's something that the Eighth Amendment protects against. Can I ask the same question, but I'm just asking a slightly different one? Suppose that you lose on that issue of the Eighth Amendment violation. Is that the end of the appeal, the end of this case? If we lose, you mean if the court were to rule that there's no Eighth Amendment violation? Yes. If the court ruled that there's no Eighth Amendment violation, then that would be an affirmative alternative grounds. But for the reasons we've explained, we don't think you should do it. I just wanted to make sure I know which was determinative of the appeal. So I think the defendants have raised the substantive Eighth Amendment. The claim is an alternative ground for affirmance. I think if you agreed with that, then that would be an affirmance on alternative grounds. All right, thank you. Thank you, Your Honor. Thanks for your work on this. We appreciate it. Thank you. All right, have a good day.